FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY -3  AM 10: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT T. KENDRICK | * | CIVIL ACTION |
| VERSUS | * | NO. 04-1147 |
| MAERSK LINE, LIMITED | * | SECTION "L"(2) |

### ORDER AND REASONS

Before the Court is the Defendant Maersk Line, Limited's ("Maersk's") Motion for Summary Judgment. This motion came for hearing on March 15, 2006. In the motion, Maersk seeks summary judgment dismissing Plaintiff's negligence and unseaworthiness claims, but does not address Plaintiff's claim for maintenance and cure. For the following reasons, Maersk's motion is GRANTED.

### I. Factual and Procedural Background

This case arises out of injuries allegedly sustained by Plaintiff, Robert Kendrick, on or about July 20, 2003 when he served as a third mate aboard the M/V MAERSK ARIZONA. Plaintiff alleges that on that date, when he was walking down a tunnel on the ship, he attempted to duck under an open electrical box door. He alleges that his shoulder caught onto the door and that he suffered injuries as a result. Defendant Maersk argues that the accident either did not occur or did not occur in the manner in which Plaintiff alleges.

On April 22, 2004, Plaintiff filed the Complaint in this Court. Plaintiff has brought claims under the Jones Act, 46 U.S.C. 688, and general maritime law for the negligence of the Defendant, the unseaworthiness of the M/V MAERSK ARIZONA, and for maintenance and cure

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____

which has never been paid in this case. Plaintiff made demand for damages in the amount of $750,000.

Trial in this matter was initially set for February 2005. After a conference with counsel, the Court continued the trial to September 12, 2005. A settlement conference occurred in August 2005, and after this conference Plaintiff's attorney petitioned the Court to withdraw as counsel of record. Because of Hurricane Katrina, the trial was continued without date, and on request of Plaintiff, the motion to withdraw of Plaintiff's counsel was granted. On January 4, 2006, Plaintiff answered an Order to Show Cause from this Court regarding Plaintiff's lack of representation in this case. At that hearing, Plaintiff requested a two-day bench trial at which he would represent himself. The Court granted that request and asked Plaintiff's former counsel to assist him in trying the case. On March 2, 2006, Plaintiff's former counsel intervened in the case in order to collect unpaid attorneys' fees. The case is presently set for trial on May 25, 2006.

On February 14, 2006, Defendant filed the instant Motion for Summary Judgment, and asks the Court to dismiss Plaintiff's negligence and unseaworthiness claims. Plaintiff responded via a letter addressed to the Court, which is attached and shall be filed into the record of this case. The Court now addresses the merits of Defendant's motion.

## II. Maersk's Motion for Summary Judgment

Although Defendant argues that Plaintiff's alleged accident never occurred, Maersk has agreed to stipulate that the accident occurred for the purposes of this motion. In addition to the exhibits submitted by the Defendant, the Court has reviewed in full the accident report, the Plaintiff's deposition, and the depositions of Captain James Nunn, Chief Mate Kevin McNutt, and Maersk's Rule 30(b)(6) designated representative, Catherine O'Connell.

Defendant alleges the following version of events. On July 30, 2003, the M/V MAERSK ARIZONA was in port in Angola, Africa and involved in cargo operations. (Plaintiff's Deposition at 100). Plaintiff was a third mate aboard the ship and was assigned to stand the noon to midnight watch during cargo operations. *Id.* at 111-12. Part of Plaintiff's job responsibilities, according to Defendant, was the task of rigging the cargo lights in the cargo holds that were being discharged. *Id.* Defendant also alleges that as third mate, Plaintiff received safety training and had experience in negotiating his job responsibilities. (Defendant's Exhibit B - training history of Robert Kendrick). Specifically, Plaintiff had eight years experience in unlicensed deck positions (Plaintiff's Deposition at 14 to 15), and six years experience as a licensed deckhand, *Id.* at 16.

Plaintiff alleges that the breakers for the cargo lights were faulty and tripped on a regular basis. (Plaintiff's Deposition at 127 and 174). On July 30, Plaintiff determined that the breakers had tripped, and he proceeded into the ship's starboard tunnel to reset the breakers and activate the lights. *Id.* at 129. It was in this tunnel that the alleged accident occurred.

Plaintiff and Defendant agree for purposes of this motion that the tunnel ran fore and aft on the starboard side of the ship. Electrical boxes were located on the side walls of the tunnel at various points, and the tunnel was lit with overhead fluorescent lights. *Id.* at 112 and 126. *See also* Defendant's Exhibits C (photos of the tunnel) and D (Deposition excerpt of James Nunn, in which he describes the tunnel and the lighting arrangements therein). Plaintiff alleges that the lighting in the tunnel was inadequate. (Plaintiff's Deposition at 174) (stating Plaintiff's allegation of poor lighting in the back area of the tunnel from his accident report). Plaintiff stated in his deposition that he entered the tunnel with a high intensity flashlight which he used to

3

illuminate the breaker panels, and that this flashlight was on when the accident occurred. *Id.* at 119, 130 and 137. This flashlight was sufficient to illuminate the path in front of the Plaintiff in the tunnel. *Id.* at 130-32.

Plaintiff stated in his deposition that he entered the tunnel, opened the doors on various boxes, and reset the breakers. *Id.* at 126. When he made his way back down the tunnel, Plaintiff alleges that he ducked under an open electrical box door. *Id.* at 129. Plaintiff stated that he raised up too soon after ducking, and that his shoulder caught the bottom corner of the door. *Id.* at 136. Plaintiff further stated in his deposition that he made the decision that ducking would be easier than closing the doors to create a clear pathway. *Id.* Plaintiff also stated in his deposition that although the hallway's lighting was poor, he could see the electrical box doors in question and knew that he had to duck in order to clear them. *Id.* at 270.

On August 20, 2003, over one month after the alleged accident, Plaintiff filled out an accident report. The report is attached as Exhibit 1 to this Order and Reasons. In the report, in response to the question of whether any person or vessel was responsible for the accident, Plaintiff responded, "Yes, me." (Court's Exhibit 1; Plaintiff's Deposition at 174). He further explained in the report that, "I should have taken the time to secure the breaker panel door; however, the breakers in question should not need continual resetting several times daily." *Id.*

On the basis of Plaintiff's statements in the accident report and in his deposition, Maersk seeks summary judgment regarding Plaintiff's negligence and unseaworthiness claims. Maersk argues that the Plaintiff has admitted he was at fault for the accident, that he had adequate lighting in the hallway, and that the decision to duck was his own. Plaintiff responds that Maersk was negligent in failing to investigate the accident and to provide medical attention despite his

4

requests to do so.

## III. Law and Analysis

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986).

### a. Plaintiff's Jones Act negligence claim

Under the Jones Act, a seaman has a cause of action against his employer for negligence. *Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2003). The fundamental duty of a Jones Act employer is to provide his seaman employees with a reasonably safe place to work, and this duty is non-delegable. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989).

While the Jones Act employer's duty to provide a reasonably safe place to work is broad in scope, it is not a form of strict liability. *Id.* at 374; *Perry v. Morgan Guar. Trust Co. of N.Y., et al.*, 528 F.2d 1378, 1379 (5th Cir. 1976). In order to recover under the Jones Act, the plaintiff has the burden of establishing: (1) a personal injury; (2) negligence by his employer; and (3) causation to the extent that the negligence was the cause in whole or in part of the seaman's


injury. *Hernandez v. Trawler Miss Vertie Mae*, 187 F.3d 432, 436 (4th Cir. 1999) (citing *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997)(en banc)). Under the Jones Act, negligence, no matter how slight, that contributes in whole or in part to a seaman's injury is sufficient to permit recovery by a seaman. *Gautreaux*, 107 F.3d at 335.

In a Jones Act suit, an employee's contributory negligence bars the employee from recovering damages sustained as a result of his own fault. *Boudreaux v. United States*, 280 F.3d 461, 466 (5th Cir. 2002) (citing *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989)). A seaman under the Jones Act is obligated to act with ordinary prudence under the circumstances. *Gautreaux*, 107 F.3d at 339. "The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education." *Id.*

In this case, by Plaintiff's own admission in his deposition and accident report, Plaintiff was the sole cause of the accident that allegedly occurred. Plaintiff argues that Maersk was negligent in that the lighting in the hallway was inadequate, causing a dangerous condition, or in that Maersk should have fixed the allegedly defective breakers rather than requiring him to enter the tunnel to trip them. However, Plaintiff admits that the tunnel in which he walked was lit well enough for him to see the electrical box doors, and that he carried a flashlight as additional lighting for the tunnel. The Court believes there is no genuine issue of material fact that the lighting was adequate in the tunnel.

Moreover, no one disputes that the tunnel could be easily accessed and traveled in by crew members, or that tripping the breakers was not an unreasonably difficult or burdensome task. Also, Plaintiff admits that he had the option of closing the box doors, but chose to duck

under them because it was easier. He further admits that his failure to clear the door completely as he ducked was his own fault and that he simply misjudged how soon to raise up after ducking. The Court is persuaded that there is no genuine issue of material fact that the tunnel was reasonably safe, and that Plaintiff's accident was caused either by his misapprehending the distance needed to clear the electrical box door or by his choosing to duck under the door rather than closing it.

This case presents a similar factual scenario to that in *Gavagan v. United States*, 955 F.2d 1016 (5th Cir. 1992). In that case, the plaintiff had recently undergone surgery to fix a fractured finger, and, although the finger was not fully healed he had been released as fit for duty. *Id.* at 1017. One of the plaintiff's job responsibilities was opening and closing valves on a tanker. *Id.* The plaintiff was asked to open a valve that had been sprayed and taped with duct tape. *Id.* The valve could not be opened without removing the tape, and removing the tape was an obvious and easy task. *Id.* However, the plaintiff attempted to open the valve without removing the tape, and re-injured his finger in the process. *Id.* The Fifth Circuit determined that the valve as it was taped was an unseaworthy condition on the tanker and was evidence of the employer's negligence. *Id.* at 1021-22. However, the defendants' unseaworthiness and negligence played no part in the plaintiff's injury because the plaintiff's own actions were the sole and proximate cause of the accident. *Id.* at 1022. The court found that the plaintiff failed to exercise ordinary care in removing the tape and in refraining from actions which would aggravate his medical condition. *Id.* at 1021. As the court stated, "there is virtually no evidence - expert or otherwise - that the taped valve presented any unreasonable or unforeseeable risk of injury[,]" and therefore the plaintiff's injury was solely caused by his own actions. *Id.*

Much like in *Gavagan*, Mr. Kendrick's accident was solely caused by his own mistake in ducking improperly around the electrical box door. Even if, as Mr. Kendrick claims, he should not have been asked to go down into the tunnel to reset the breakers, there was nothing in the tunnel itself that presented an unreasonable or unforeseeable risk of injury to him. The alleged faulty condition of the breakers was not a cause of Mr. Kendrick's accident; thus, any negligence on the part of the Defendants regarding those breakers was not a cause of Mr. Kendrick's accident. Because the Plaintiff has failed to show causation, summary judgment is proper on Mr. Kendrick's negligence claim.

b.   **Plaintiff's unseaworthiness claim**

The owner of a vessel has a duty to furnish a seaworthy vessel, and that duty is non-delegable. *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993). To be seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). An unseaworthy condition can be shown, not only from a defective condition of the ship or its equipment, but also when it is crewed by an inadequate, understaffed, or ill-trained crew. *Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734 (5th Cir. 1997). Under a claim for vessel unseaworthiness, damages are recoverable where "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) (citing *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985)).

As he argued under his negligence claim, Plaintiff alleges that the M/V MAERSK

ARIZONA was unseaworthy because of the allegedly poor lighting and the allegedly defective condition of the breakers. The Court is convinced that the Plaintiff has demonstrated no genuine issue of material fact regarding the lighting, as he admitted that the lighting was adequate enough for him to apprehend the electrical box door and the distance needed to negotiate it. Also, Plaintiff has failed to demonstrate that the breakers or the electrical box doors were not reasonably suited for their purpose, or that the electrical box doors presented an unforeseeable risk of harm to the Plaintiff. A seaman is not guaranteed a perfect vessel, but only one which is reasonably suited for its intended purpose. *Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992).

The Court finds that the Plaintiff has not demonstrated any unseaworthiness of the vessel. Alternatively, even if the vessel was unseaworthy in some manner (e.g., the breakers improperly tripped on a regular basis), any unseaworthiness of the M/V MAERSK ARIZONA was not a cause of Mr. Kendrick's accident. Instead, the cause of the Plaintiff's injury was his own negligence in carrying out his task. Because the Plaintiff has failed to show causation, summary judgment is appropriate on Mr. Kendrick's unseaworthiness claim. *Gavagan v. United States*, 955 F.2d 1016, 1021-22 (5th Cir. 1992).

## IV. Conclusion

Accordingly, Defendant's Motion for Summary Judgment is GRANTED. The parties shall proceed with a bench trial on Plaintiff's claims for maintenance and cure only.

New Orleans, Louisiana, this __1st__ day of May, 2006.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT T. KENDRICK | CIVIL ACTION |
| VERSUS | NO. 04-1147 |
| MAERSK LINE, LIMITED | SECTION "L" (2) |
| | JUDGE FALLON |
| | MAG. WILKINSON |

## PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

To the honorable Judge Fallon,

I am apposed to the defendant's motion to dismiss my Jones Act and unseaforthiness claims against Maersk. I feel the deposition testimony already provided by the Captain, Chief Mate, and Mrs. O'Connell of Maersk risk management department as well as everybody else deposed in this case, verifies the defendants did not investigate and document my accident, nor did they provide any medical attention despite my repeated request. Maersk did institute a policy of denial and wrongful accusations against me that continues to this day. The defendant's action's, once informed by me of an accident, is the heart of *wrong doing* in this matter and should be discussed at my day in court.

Respectfully yours,

Robert T. Kendrick