UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT T. KENDRICK** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-1147** |
| **MAERSK LINE, LIMITED** | * | **SECTION "L"(2)** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I. Procedural History**

This case arises out of injuries allegedly sustained by Plaintiff Robert Kendrick ("Plaintiff") on or about July 30, 2003 when he served as a third mate aboard the M/V MAERSK ARIZONA.  Plaintiff alleges that on that date, when he was walking down a tunnel on the ship, he attempted to duck under an open electrical box door.  He states that he misjudged his position, inappropriately stood up and his right shoulder struck the open door.  Plaintiff filed suit against Maersk Line, Limited ("Maersk"), the vessel owner, seeking damages under the Jones Act, 46 U.S.C. § 688, and General Maritime Law for the negligence of the Defendant, the unseaworthiness of the vessel, maintenance and cure and penalties for wanton and willful denial of maintenance and cure.

Maersk argues that the accident either did not occur or occurred entirely due to the negligence of the Plaintiff.  With regard to the Plaintiff's maintenance and cure claim, Maersk claims that Plaintiff's medical condition was due to a prior injury or a subsequent injury or was not timely reported.

Trial in this matter was initially set for February 2005.  After a conference with counsel, the Court continued the trial to September 12, 2005.  A settlement conference occurred in August 2005, and after this conference Plaintiff's attorney petitioned the Court to withdraw as

counsel of record. The trial was continued without date due to Hurricane Katrina, and Plaintiff counsel's motion to withdraw was granted upon Plaintiff's request. On January 4, 2006, Plaintiff answered an Order to Show Cause from this Court regarding Plaintiff's lack of representation in this case. At that hearing, Plaintiff requested a bench trial at which he would represent himself. The Court granted that request and asked Plaintiff's former counsel to assist him in trying the case. On March 2, 2006, Plaintiff's former counsel intervened in the case in order to collect unpaid attorney's fees and costs incurred in connection with its representation of the Plaintiff.

On May 1, 2006, the Court granted partial summary judgment for Maersk and dismissed Plaintiff's negligence and unseaworthiness claims. Thus, the trial is limited to the Plaintiff's claim for maintenance and cure and attorney's fees for failure to pay maintenance and cure. The Plaintiff's maintenance claim came on for trial without a jury on August 25, 2006.

The Court, having carefully considered the testimony of the witnesses, the exhibits in the record, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law. To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such. And to the extent that a Conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption.

**II. Findings of Fact**

(1)

Plaintiff Robert T. Kendrick is an individual of the age of majority and a resident of Mississippi.

(2)

Defendant Maersk Line, Limited is the owner and operator of the M/V MAERSK ARIZONA, a 734.9 foot freight ship (official #1029429)

(3)

At all relevant times, Plaintiff was employed by Maersk as a member of the crew of the M/V MAERSK ARIZONA, in the capacity of third mate.

(4)

Plaintiff was a member of the American Maritime Officers Union ("AMO"). Likewise, the Captain of the vessel, James Nunn, and the Chief Mate, Kevin McNutt, were also members of the AMO.

(5)

Prior to joining the M/V MAERSK ARIZONA on July 6, 2003, Plaintiff signed up to attend a school sponsored by the AMO in an attempt to upgrade his license to a second mate's license. Classes were scheduled to commence in late September 2003.

(6)

Plaintiff signed articles when he joined the M/V MAERSK ARIZONA that contractually required him to stay on board the vessel beyond his scheduled school in September unless he resigned his position as third mate aboard the vessel.

(7)

On or about July 30, 2003, while the vessel was engaged in cargo operations in Angola, Africa, Plaintiff injured his right shoulder while walking in a crouched position in the starboard tunnel of the vessel when he inappropriately stood up striking his shoulder on the edge of an opened door of a fuse box .

(8)

The Plaintiff did not immediately report his injury. There is no entry in the ship's medical log relative to any accident or injury involving the Plaintiff while he worked aboard the

M/V MAERSK ARIZONA, and there is no mention in any of the ship's safety meeting minutes of any accident involving the Plaintiff.

(9)

Some two weeks after his accident, while the vessel was at sea en route to Galveston, Texas, the Plaintiff told the Captain, James F. Nunn, that he injured his shoulder while the vessel was in Africa. The conversation took place while the Captain, the Plaintiff and the Chief Mate, Kevin McNutt, were in the cargo office on the main deck. At some period between the time he told the Captain and Chief Mate of the injury and the time the vessel arrived in Galveston, the Plaintiff filled out several pages of an accident report in which he referred to being injured aboard the vessel. It is not clear from the evidence whether he got these pages from the Company's website or from the Chief Mate. It is also unclear or at least disputed as to what he did with these pages and when he did it. The weight of the credible evidence indicates that at some time after he left the vessel, he forwarded the pages to the Company's claim office to support his claim for maintenance and cure.

(10)

When the vessel arrived in Galveston, the Plaintiff disembarked without notifying anyone and went to the emergency room at a local hospital. Apparently an x-ray or some other test was performed, and the treating physician gave the Plaintiff a certificate stating that he was not fit for duty for a period of two weeks. The Plaintiff gave this certificate to the Captain or Chief Mate when he returned to the vessel later that day. The vessel sailed to Houston and arrived there on or about August 26, 2003, at which time the voyage ended and the Plaintiff was discharged and released from vessel duty.

(11)

The Plaintiff went to his aunt's home in Houston and was driven to his home in Pine, Louisiana later that week.  On September 10, 2003, the Plaintiff saw Dr. Daniel Sinclair.  An MRI of the Plaintiff's right shoulder was performed and revealed arthritic changes with no signs of rotator cuff tear and a normal appearance of the labrum (a lip-shaped bone in the shoulder).  Dr. Sinclair treated the Plaintiff with medication, physical therapy and injections.  By the Plaintiff's October 23, 2003 visit, Dr. Sinclair reported that the Plaintiff's shoulder had increased strength with full range of motion and was neurologically intact.  Dr. Sinclair released the Plaintiff to normal activities and gave him a fit for duty certificate.  The Plaintiff registered with the union hall to ship out on the next available ship.  The Plaintiff also registered and received state unemployment compensation which is given to individuals who are presently unemployed but who are ready, willing and able to work .

(12)

Around the first or second week of November in 2003, the Plaintiff went deer hunting and discharged a shotgun using his right shoulder.  In December, he returned to Dr. Sinclair and reported the incident, complaining of soreness on the top and back of the right shoulder.  Dr. Sinclair referred the Plaintiff to another member of his medical practice, Dr. Kevin Darr, an orthopedic surgeon.  Dr. Darr's examination revealed decreased shoulder swing.  No atrophy was noted, but Dr. Darr recorded that the Plaintiff had swelling in the AC joint, as well as prominence and significant tenderness over the AC joint and over the tuberosity.  The Plaintiff had a positive impingement sign.  Dr. Darr suspected a labral tear based on the MRI report, shoulder pain and a popping sound in the Plaintiff's shoulder upon movement.  Dr. Darr performed arthroscopic surgery on the Plaintiff's right shoulder on February 19, 2004.  During the surgery, the doctor did not find any tear, but he did find some mediation or contact between

the bone and tendon in the Plaintiff's shoulder and an inflamed bursa, which the doctor attributed largely to an aggravation of the arthritic condition. Dr. Darr removed or shaved a portion of the clavicle which increased the space and eliminated the rubbing or contact. The Plaintiff remained under Dr. Darr's care until October 29, 2004, at which date he was discharged as having reached maximum medical improvement.

(13)

The Plaintiff has some restrictions on lifting and overhead movement which militate against his returning to his prior job. He is now a full time student at Southern Mississippi University in Hattiesburg, Mississippi.

(14)

The Plaintiff has received all appropriate medical care for his shoulder. There is, however, a dispute over who is responsible for the medical bills. The AMO medical plan provides a member seaman with $10,000 of medical coverage if the accident, injury or illness occurred aboard ship and essentially unlimited coverage if the accident, injury or illness occurred outside the service of the vessel. Thus, knowing that it had at least $10,000 of medical coverage, the union's health plan began paying for the Plaintiff's medical treatment.

(15)

Plaintiff contends that as his injury occurred aboard ship, he is entitled to maintenance and cure and that Maersk's failure to timely pay maintenance and cure was willful and arbitrary, entitling him to back payments and attorney's fees. Maersk's claims manager asserts that she has either no or insufficient "paperwork" to support the occurrence of an injury or when or where it occurred to justify accepting responsibility for medical expenses or Maersk's maintenance obligation. She further claims that Maersk's decision was not willful and arbitrary,

but instead justified by the actions or inactions of the Plaintiff.

**III. Conclusions of Law**

(1)

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1333, which provides original jurisdiction over admiralty or maritime claims, and the Jones Act, 46 U.S.C. § 688. Venue is proper because the defendant is subject to personal jurisdiction of this court.

(2)

Having previously dismissed the Plaintiff's Jones Act and unseaworthiness claims, the only matter that remains before this Court is a determination as to whether the Plaintiff is entitled to maintenance and cure benefits and/or whether he is entitled to attorney's fees if Maersk's refusal to pay maintenance and cure is callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent.

(3)

A seaman injured in the course of employment has a claim for maintenance and cure. The claim lies against the seaman's employer which, in this instance, is also the vessel owner. Maintenance is the right of a seaman to food and lodging and cure is the right to necessary and appropriate medical services. Both extend to the point at which the seaman reaches maximum medical recovery. *See* Schoenbaum, *Admiralty and Maritime Law of Admiralty*, 297 (2d ed. 1975); *Brees v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)). By contrast, the rate of maintenance for a union seaman, such as the Plaintiff, is fixed at $8.00 per day.

4.

Upon receiving a demand for maintenance and cure, a shipowner is not required to

begin payments immediately, but may undertake a reasonable investigation of the seaman's claim. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). If after an investigation the shipowner unreasonably rejects the demand for maintenance and cure, the shipowner is liable for both maintenance and cure and for compensatory damages, including damages for aggravation of the seaman's injuries. *Id.* If the shipowner's failure to pay is "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent," the shipowner is liable for punitive damages and attorney's fees. *Id. (*describing "escalating scale" of liability); *see also Vaughan*, 369 U.S. at 530-31; *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 177 (5th Cir. 2005) (citing *Morales* standard with approval).

(5)

In order to recover for a claim of maintenance and cure and attorney's fees, the Plaintiff bears the burden of proving that he was injured in the course of his employment aboard the vessel, his employer failed to pay his maintenance and cure and this failure was not only unreasonable, but was also callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent. *See Morales*, 829 F.2d at 1359.

(6)

The credible evidence supports the conclusion that the Plaintiff sustained an injury to his right shoulder on or about July 30, 2003 while working aboard the M/V MAERSK ARIZONA and that he was unfit for duty as a result of this injury until October 23, 2003, when he was declared fit for duty and applied for work. He is entitled to maintenance and cure from August 26, 2003, when he left the vessel, until October 23, 2003, the date of maximum cure. Maximum cure is the point at which it is probable that further treatment will not result in betterment of the seaman's condition. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5-6 (1975); *Pelotto v. L& N Towing*

*Co.*, 604 F.2d 396, 400 (5th Cir. 1970). The Plaintiff's subsequent medical problems and resultant treatment were due to the hunting incident and not the incident aboard the vessel. The failure of his employer to promptly pay maintenance was not callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent, as much confusion and uncertainty were created by the Plaintiff's failure to properly and promptly report his injury.

## IV.  Pre-Judgment Interest

As prejudgment interest may be awarded in admiralty, the Court finds that an order of pre-judgment interest on maintenance and cure is proper. The starting date and rate of interest is left to the sound discretion of the Court. *See Doucet v. Wheless Drilling Co.*, 467 F.2d 336, 340 (5th Cir. 1972); *Marathon Pipeline Co. v. M/V Sea Level II*, 806 F.2d 585, 593 (5th Cir. 1986), *reh'g denied*, 811 F.2d 602 (1987). The Court finds that an award of pre-judgment interest from the date it was due is appropriate in this case at the rate of 7 percent per annum on the Plaintiff's maintenance and cure claims.

## V.  Summary

On the basis of the foregoing Findings of Fact and Conclusions of Law, the Court finds that the Plaintiff is entitled to recover maintenance and cure. Accordingly, as the Plaintiff is entitled to recover a maximum amount of $8.00 a day in maintenance and cure from the approximate date of injury, July 30, 2003, to the date he reached maximum medical recovery, October 23, 2003, the Plaintiff's total recovery amount for maintenance and cure is $516.00.

Additionally, the Plaintiff is entitled to pre-judgment interest on the above-mentioned amount of $516.00, at the rate of 7 percent per annum from the date each payment became due until satisfied in full, plus all court costs.

As the Court finds that the Defendant was neither willful nor arbitrary in denying maintenance and cure, the Plaintiff is not entitled to receive from the Defendant any amount for punitive damages or attorney's fees.[1]

IT IS SO ORDERED.

New Orleans, Louisiana, this   12th   day of   September  , 2006.

_____
UNITED STATES DISTRICT JUDGE

---

[1] Of course, the Plaintiff may be responsible for attorney's fees based on the amount recovered, depending on the terms of the fee contract between the Plaintiff and his counsel.